## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA

UPTOWN PAWN & JEWELRY, INC.
A Florida Corporation

                Plaintiff

vs.

THE CITY OF HOLLYWOOD,
A Florid Municipal Corporation

                Defendant

_____/

CASE NO. **00-7195**

CIV-LENARD

MAGISTRATE
TURNOFF

## PLAINTIFF'S MOTION FOR PRELIMINARY INJUUNCTION AND
## MEMORANDUM OF LAW IN SUPPORT THEREOF

COMES NOW the Plaintiff, UPTOWN PAWN & JEWELRY, INC., A Florida

Corporation, through undersigned counsel, pursuant to Rule 65 of the Federal Rules of

Civil Procedure, and moves this Court to issue a preliminary injunction enjoining the

Defendant, City of Hollywood, from enforcing paragraph 9 of its Request for Proposal on

the grounds that its enforcement is a violation of the Plaintiff's First and Fourteenth

Amendment rights as guaranteed by the United States Constitution, and in support

thereof, submits the following:

### FACTUAL BACKGROUND

1. PLAINTIFF is engaged in the business of pawnbrokering.  It has maintained its

business at the aforementioned address since 1986.  It is properly licensed under all

regulations of the City of Hollywood and the State of Florida.

2. The City of Hollywood has sub-contracted to private entities the right to place "bus benches" throughout the City of Hollywood on its property. There are currently approximately 415 bus benches in the City of Hollywood.

3. Prior to January 17, 2000, the City of Hollywood had a contract with the Hollywood Jaycees, Inc., d/b/a Bench Ads of Hollywood. The contract authorized the Hollywood Jaycees to sell advertising space on the benches to private businesses. Any private business wishing to purchase advertising space could do so by negotiating a rate with the Hollywood Jaycees or whoever had the contract rights with the City of Hollywood.

4. All bus benches are owned by the City of Hollywood and it also owns the rights to the advertising on the benches.

5. For the past fourteen years, Plaintiff has placed advertisements for its business on city owned benches throughout the City of Hollywood. Plaintiff has paid for the right to place its advertisements by paying a fee to the Hollywood Jaycees. Plaintiff's advertisements were designed to generate business from residents in the City of Hollywood.

6. The use of bench advertisements is crucial to Plaintiff's business and is one of the main revenue generating measures that it employs. Without the use of the bench advertisements, Plaintiff's business has suffered (an affidavit from Nicholas Della Grotta, president of Plaintiff is attached as Exhibit B).

7. On November 10, 1999, the City of Hollywood issued a Request For Proposal

For Bus Bench Advertising (attached as Exhibit A). It sought a new agreement to replace

the previous agreement with the Hollywood Jaycees. Paragraph C. 1, provides as follows:

> The Franchisee will furnish and maintain public benches at no cost to the City and
> will place said benches at locations approved by the City, acting through the office
> of the City Manager, including such places as bus stops, school stops, shopping
> centers, beach areas, and business zones for the benefit of our citizens. Unless
> otherwise requested by the City, benches shall be placed only at bus stops, with the
> exception of permitted areas where there are sidewalks. The benches shall be
> placed to achieve the maximum pedestrian safety and convenience.

Paragraph C. 9, provides:

> The Franchisee will be authorized to sell advertising to be placed upon all the
> public benches, provided, however, there shall be no liquor, tobacco, X-rated
> movies, adult book store, massage parlor, pawn shop, tattoo parlor or check
> cashing advertising of any nature whatsoever placed upon the public benches.

8. Gateway Outdoor Advertising, Inc., located at 2650 W. 8th Street, Hialeah,

Florida, was awarded the above contract, and began administering the provisions of the

contract on January 17, 2000.

9. On January 17, 2000, Plaintiff was precluded from placing its advertisements on

bus benches in the City of Hollywood because of the above Request for Proposal that was

adopted as the policy of the City of Hollywood

## MEMORANDUM OF LAW

10. A party moving for a preliminary injunction must prove the following four

elements: 1.) a substantial likelihood of success on the merits; 2.) irreparable injury will be

suffered unless the injunction issues; 3.) the threatened injury to the moving party

outweighs that which may be caused to the non-moving party; and 4.) the granting of an

injunction will not be adverse to the public interest. *McDonald's Corp. v. Robertson,* 147 F.3d 1301 (11th Cir. 1998); *Tefel v. Reno,* 180 F.3d 1286 (11th Cir. 1999).

11. There is a substantial likelihood that Plaintiff will be successful on the merits in its action. Plaintiff has a First Amendment right to engage in commercial speech. *Virginia Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976). "Commercial speech that is not false, deceptive, or misleading can be restricted, but only if the State shows that the restriction directly and materially advances a substantial state interest in a manner no more extensive than necessary to serve that interest." *Ibanez v. Florida Dep't of Business and Professional Regulation, Bd. Of Accountancy,* 512 U.S. 136, 142, 114 S.Ct. 2084, 2088, 129 L.Ed.2d 118 (1994), citing *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York,* 447 U.S. 557, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980).

> The First Amendment's concern for commercial speech is based on the informational function of advertising [citation omitted]. Consequently, there can be no constitutional objection to the suppression of commercial messages that do not accurately inform the public about lawful activity. The government may ban forms of communication more likely to deceive the public than to inform it, [citations omitted], and commercial speech related to illegal activity, [citation omitted].

> If the communication is neither misleading nor related to unlawful activity, the government's power is more circumscribed. The State must assert a substantial interest to be achieved by restrictions on commercial speech. Moreover, the regulatory technique must be in proportion to that interest. The limitation on expression must be designed carefully to achieve the State's goal. Compliance with this requirement may be measured by two criteria. First, the restriction must directly advance the state interest involved; the regulation may not be sustained if it provides only ineffective or remote support for the government's purpose. Second, if the governmental interest could be served as well by a more limited restriction on commercial speech, the excessive restrictions cannot survive.

*Id.. See Also: Babkes v. Satz,* 944 F. Supp. 909 (S.D. Fla. 1996) ("The Defendant bears

the burden of justifying the restrictions the State has placed on commercial speech

[citation omitted]. For the Defendant to prevail on this question, he must demonstrate

that the link between this statute and its asserted governmental interests is an "immediate

connection" or a "direct link." [citations omitted] A "tenuous" or "speculative" link is

insufficient to meet this burden. In short, "the regulation may not be sustained if it

provides only ineffective or remote support for the government's purpose." [citation

omitted]).

        12. Based on the above criteria, the City of Hollywood's prohibition of

pawnbroker advertising on benches owned by the city cannot survive constitutional

muster. This case is not about the total ban of commercial advertising in a municipality.

*See: Metromedia, Inc. v San Diego,* 453 So.2d 490, 101 S.Ct. 2118, 60 L.Ed 2d 800

(1981). The City of Hollywood has sought, without any justification, to ban a form of

commercial speech that is truthful and not misleading. The City, for unstated reasons, has

sought to permit some forms of commercial advertising, even if they are false and

misleading, and ban other forms of commercial advertising regardless of whether or not

they are false or misleading. Thus, Plaintiff might wish to post a sign on a bench that

states plainly: "UPTOWN PAWN – 6020, HOLLYWOOD BLVD.- 981 7296." Such an

advertisement would be unlawful under the dictates of Exhibit A. However, an exotic

dance club, racetrack, Indian gambling casino, bingo hall, or title loan store (or any other

*commercial establishment, for that matter*) could place an ad on a city owned bench that

was both false and misleading. Under the latter scenario, the City of Hollywood would

have no objection but would proscribe a pawnshop from innocuously placing its name and address on the same bench.

13. The facts in this case are even more constitutionally egregious than what the Supreme Court was presented with in *Linmark Associates v. Township of Willingboro*, 431 U.S. 85, 97 S.Ct. 1614, 52 L.Ed.2d 155 (1977), wherein the Defendant sought to ban all "For Sale" signs posted on private property on the grounds that the community was suffering from "white flight" and the municipality had an interest in maintaining an aura of stability and racial harmony. The Supreme Court struck this ordinance down as unconstitutional on the grounds that it was a content based restriction of speech that served no legitimate governmental purpose. Likewise the Eleventh Circuit has also declared unconstitutional an ordinance that is directly applicable to the case at bar. In *Dills v. City of Marietta, Ga.*, 674 F.2d1377 (11th Cir. 1982), the city of Marietta sought to ban all portable signs in the city. The Court declared such a prohibition unconstitutional on the basis that the city could offer no constitutionally permissible reason to justify the speech restriction. The Court was especially mindful that the ordinance itself contained no justification for the ban. The only purported justification offered to support the proposed ban on speech was offered at oral argument by counsel. The Court was not swayed. "Yet the district court found, and our review of the record confirms, an absence of any evidence that Marietta officials considered portable signs esthetically displeasing. We therefore decline to accept counsel's mere incantation of esthetics as a proper state purpose in evaluating the challenged provisions." *Id.* at 1382. The request for proposal set out in Exhibit A does not offer any reason at all why pawnshops are prohibited form advertising on city owned benches as opposed to other forms of advertising that are

permitted.  The fact that an ordinance does not state what municipal purpose a speech

prohibition advances is indicative of its unconstitutionality.  In *National Advertising v.*

*Town of Babylon,* 900 F.2d 551 (2d Cir. 1990), the Court struck down various municipal

bans on billboard advertising.  "Even though one might assume that the towns were

interested in traffic safety and aesthetics, the ordinances include no such statement of

purpose." *Id.* at 555.  The Court went on to say that  "[w]e have been unable to find any

case where a court has taken judicial notice of an unstated and unexplained legislative

purpose for an ordinance that restricts speech." *Id.*

     14.  The only conceivable reason the City of Hollywood has for banning

pawnshops from advertising on city owned benches is because they do not like

pawnshops.  The prohibition is not one of time, manner, or place but absolute.  However,

the business of pawnbrokerering is legal in the State of Florida.  It is regulated by Section

539.001, Florida Statutes.  Attempting to ban advertising that is legal and not misleading

is unconstitutional. *Linmark, supra.*

     15.  The actions of the City of Hollywood are also unconstitutional because they

discriminate against noncommercial speech or prefer commercial over noncommercial

speech.  Under the Request for Proposal, there is a total ban on any advertising by

pawnshops "of any nature whatsoever placed upon the public benches."  Thus, Plaintiff

could not erect a sign on a city owned bench that promoted political speech.  For example,

suppose that Plaintiff wanted to put a sign on a bench that said "Property Taxes in

Broward County Are Too High.  Vote For Lower Taxes.  This Message Brought To You

By Uptown Pawn."  Under the City of Hollywood's Request for Proposal, this message

would be prohibited.  However, the government cannot selectively determine what type of

speech is acceptable for the public to view and what speech it wishes to suppress. *Metromedia, supra. See Also: National Advertising, supra.* ("For instance, as Islip has conceded in its reply brief to this court, under its ordinance " 'Joe's Famous Pizza' ... could not install a sign say[ing] 'Abortion is Murder.' " The district court concluded that the Freeport and Islip ordinances unconstitutionally prohibit noncommercial speech." *Id.* at 554.). Because the City of Hollywood has not excepted noncommercial speech from the ambit of what it has proscribed in its Request for Proposal, its action violates Plaintiff's First Amendment rights for this reason alone.

16. Plaintiff will suffer irreparable harm if this injunction is not issued. Its business is suffering each and every day it is not allowed to advertise on city owned benches (affidavit of Nicholas Della Grotta). Furthermore, the infringement of First Amendment rights clearly constitutes irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976);

17. Since Defendant has violated the Plaintiff's constitutional rights, it will not and cannot suffer any detrimental effect by having an injunction issued against it. The equities are in Plaintiff's favor.

18. The public interest will be served by the issuance of an injunction because a violation of a citizen's constitutional rights will have been vindicated.

WHEREFORE, Plaintiff respectfully requests that this Court issue a temporary injunction prohibiting the City of Hollywood from enforcing paragraph nine of its Request

for Proposal for Bench Advertising (Exhibit A) and thereby allowing Plaintiff to contract

to place its bench ads on city owned benches in the City of Hollywood.

Respectfully submitted,

Dennis R. Bedard
Attorney for Plaintiff
1717 North Bayshore Drive
Suite 102
Miami, Florida 33132
(305) 530 0795
(305) 530 9587 FAX

By

Dennis R. Bedard
FBN 759279

# REQUEST FOR PROPOSAL

# FOR

# BUS BENCH ADVERTISING

ISSUED BY THE CITY OF HOLLYWOOD, FLORIDA
PURCHASING AND MATERIALS MANAGEMENT DIVISION

## RFP #3621-JLW

## PROPOSALS SHALL BE SUBMITTED ON OR BEFORE:

## 3:00 P.M., FRIDAY, DECEMBER 3, 1999

IN THE OFFICE OF THE CITY CLERK
2600 HOLLYWOOD BOULEVARD, ROOM 221
HOLLYWOOD, FLORIDA 33020

*An Equal Opportunity and Service Provider Ager

EXHITBIT A

# TABLE OF CONTENTS

**PART I:**  PURPOSE, BACKGROUND AND SCOPE OF SERVICE
REQUESTED

A.  PURPOSE.................................................................................................. 1

B.  BACKGROUND......................................................................................... 1

C.  SCOPE OF SERVICE ........................................................................... 1-3

D.  TERMS AND CONDITIONS................................................................... 3-6

E.  OTHER CONSIDERATIONS .................................................................. 6-7

F.  EVALUATION CRITERIA............................................................................ 8

G.  SELECTION PROCESS ............................................................................. 8

**PART II:**   PROPOSAL SUBMISSION REQUIREMENTS

A.  SUBMISSION REQUIREMENTS............................................................ 9-11

B.  GENERAL INFORMATION AND SCHEDULE ....................................... 11-12

C.  EQUAL EMPLOYMENT OPPORTUNITY .................................................. 12

D.  MINORITY/WOMEN BUSINESS ENTERPRISE STATEMENT ................... 12

E.  ADA COMPLIANCE .................................................................................. 12

F.  PUBLIC ENTITY CRIMES.......................................................................... 13

G.  INSURANCE REQUIREMENTS ............................................................ 13-14

H.  PROTEST .................................................................................................. 14

I.   DECLARATION......................................................................................... 15

J.  YEAR 2000 (Y2K) COMPLIANCE.............................................................. 15

K.  DISCLOSURE STATEMENT ...................................................................... 16

     SIGNATURE PAGE .................................................................................. 17

     ATTACHMENTS:

     EXHIBIT A – M/WBE PARTICIPATION FORM
     EXHIBIT B – LETTER OF INTENT TO PERFORM AS A SUBCONTRACTOR

## PART I:   PURPOSE, BACKGROUND AND SCOPE OF SERVICE REQUESTED

## A.   PURPOSE

The City of Hollywood is seeking proposals from firms with the capability to provide Bus Benches to be strategically placed within the City's jurisdiction for use by the citizens. The Franchisee will be authorized to sell advertising to be placed upon all public benches. The Franchisee will be expected to furnish and maintain the benches and immediate surrounding areas.

## B.   BACKGROUND

The current Franchise Agreement with the Hollywood Jaycees, Inc., d/b/a Bench Ads of Hollywood, will expire January 17, 2000. Under the Franchise Agreement the Franchisee is authorized to place vendor owned and maintained bus benches throughout the City's jurisdiction, subject to site approvals. The Franchisee is also authorized to sell advertising placed upon the benches. There are currently about 415 bus benches located throughout the City. This Request for Proposal is to establish a new agreement for the replacement of no less than the same amount within sixty (60) days after notification of award.

## C.   SCOPE OF SERVICE

1.   The Franchisee will furnish and maintain public benches at no cost to the City and will place said benches at locations approved by the City, acting through the office of the City Manager, including such places as bus stops, school stops, shopping centers, beach areas, and business zones for the benefit of our citizens. Unless otherwise requested by the City, benches shall be placed only at bus stops, with the exception of permitted areas where there are sidewalks. The benches shall be placed to achieve the maximum pedestrian safety and convenience.

2.   The Franchisee shall provide, install and maintain, at its sole cost and expense, benches designed to comply with the provisions of the American Disabilities Act (ADA) concerning clearance and wheelchair accessibility.

3.   All benches, whether existing or new, shall be constructed of top grade materials. Consideration of benches constructed of recycled material is strongly encouraged. Franchisee shall, at its expense, maintain all such benches in good and serviceable condition during the entire term of the Contract, and the City shall have the right to inspect such benches periodically to determine their condition. Franchisee shall replace or recondition, to the satisfaction of the City, any benches which the City determines are no longer in good and serviceable condition.

1

SCOPE OF SERVICE (CONT'D)

4.      The City encourages innovative proposals offering premium grade benches to be placed in specific traffic areas defined by the City (i.e., Beach Broadwalk or Gateway areas) which would feature specialized advertisements or no advertising whatsoever.

5.      The City reserves the right to require the removal of any bench that is in need of repair or maintenance upon ten (10) days written notice to Franchisee. Any bench not maintained or repaired within the ten (10) days notice period may be removed by the City at the expense of the Franchisee; removal does not exempt fee.

6.      Benches shall not be allowed in districts zoned RS-5 and RS-6 except at bus stops or where specifically approved by the City Manager on the basis of unusual circumstances.

7.      Prior to the installation of any bench within the City limits of Hollywood, an application shall be made by the Franchisee, which includes the written consent of the nearest abutting property owner, tenant or occupant, on the prescribed form showing the location and date to be installed, and these locations shall be approved by the City Engineer. A notice will be given to the Engineering Division of any Franchisee bench that has been removed.

        Prior to the installation of any bench in a public right-of-way under Broward County jurisdiction, the Franchisee shall obtain the approval of County Traffic Engineering and Mass Transit Division.

8.      Any reconstruction or construction at or in close proximity to the locations of a Franchisee's bench shall automatically require the removal of same, and a new application shall be necessary for relocation.

9.      The Franchisee will be authorized to sell advertising to be placed upon all the public benches, provided, however, there shall be no liquor, tobacco, X-rated movies, adult book store, massage parlor, pawn shop, tattoo parlor or check cashing advertising of any nature whatsoever placed upon the public benches.

10.     The Franchisee will provide, install and maintain, at its sole cost and expense, high quality, expertly designed commercial advertising displays on bus benches approved and designated by the City.

11.     The following safety/convenience criteria shall be applicable to all new and existing bus bench installations:

        a.      Unless Franchisee gains a prior written variance, all benches shall be installed parallel with the adjacent roadway. After prior approval by City, placement of benches at up to a thirty (30) degree angle with the roadway may be considered by individual site where personal safety will not be affected.

2

SCOPE OF SERVICE (CONT'D)

b.    A minimum six (6) foot setback from the adjacent roadway or edge of driveway shall be maintained wherever possible.

c.    A minimum three (3) foot sidewalk clearance shall be maintained.

d.    Benches shall not be located within twenty-five (25) feet of the right-of-way intersection corner, fire hydrant, fire or police call box or any other emergency facility.

e.    Weed control under and immediately around the bench shall be maintained by the Franchisee.

f.    No bench shall be placed in the median of a divided highway.

g.    Any reference to traffic control devices, i.e., stop, yield signs, shall not be permitted.

12.   Any bench deemed to endanger life or property by the City Engineer shall be removed within ten (10) days from notification of same.

13.   All benches not complying with the provisions of this Contract shall be corrected by the Franchisee within ten (10) days after notification by the City, or the benches shall be removed by the City. All costs attendant thereto shall be paid by the Franchisee.

14.   During the term of this Contract, the Franchisee shall obtain any and all licenses and permits necessary for the installation and maintenance of the benches.

## D.   TERMS AND CONDITIONS

1.    The following terms and conditions shall apply to any resulting Bus Bench Franchise Contract:

a.    Each bench shall be identified by a separate number showing location and date installed. A monthly inventory sheet will be prepared reflecting number and location of each bench within the corporate limits of the City.

b.    This inventory list shall be presented to the City's Director of Financial Services Department by the 10th of the following month and accompanied by payment in full for current month's benches, based on total number of benches located within the City as of the prior month.

c.    Guaranteed monthly payment to the City shall be based on total number of benches in service and not based on number of benches with advertising.

3

TERMS AND CONDITIONS (CONT'D)

d.   Franchisee shall share an agreed upon percentage of the gross advertising receipts with the City payable on a quarterly basis.

e.   Franchisee's payment to the City shall include supporting documentation for all bus bench advertising revenues for the applicable period.

f.   The number of benches needed to meet City Franchise requirements is estimated at approximately 415, and this quantity will be used to evaluate any resulting award.  Said quantity may change as specified herein.

g.   All respondents should be able to furnish this quantity within sixty (60) days after notification of award with 50% or 207 benches within thirty (30) days from date of award and/or execution of Franchise Contract, whichever is later.

h.   Assignment of any Franchisee rights or obligations contained in this Contract is prohibited without prior written approval of the City.

i.   All respondents must furnish the following information for consideration and/or evaluation of their proposal:

Name of company, organization or individual who will service and install bus benches.

_____

_____

Telephone Number _____

List three (3) or more locations or operations now being serviced by respondent.

_____

_____

_____

_____

4

TERMS AND CONDITIONS (CONT'D)

Name of company, organization or individual who will solicit advertising for bus benches.

_____

_____

_____

Telephone Number_____

j.   The City of Hollywood shall require an annual audit by a Certified Public Accountant as to the number of benches in service and fees paid as specified herein within forty-five (45) days after the end of each twelve (12) month period.

2.   A Surety Deposit of Two Thousand Dollars ($2,000) in the form of cash, Cashier's Check, or Money Order made payable to the City of Hollywood must be attached to this Proposal. If not attached or not in specified form, Proposal may not be considered for award. The cash surety deposit of the successful Proposal shall be retained as security until Franchise Contract has been executed, and the required bonds and insurance papers received and approved by the City. Surety deposits of unsuccessful Proposers will be returned within fifteen (15) working days from date of award.

3.   The City of Hollywood shall require a 100% Performance and Payment Bond for each year of any resulting Franchise period. It shall be based on the specified minimum guaranteed annual payment to be paid to the City for each twelve (12) month period plus an amount equal to the City's share of gross advertising receipts for the previous twelve (12) month period.

**Note: First year, twelve (12) month period, Bond will be equal to the firm annual fee bid herein.**

(Each following twelve (12) month period the annual fee may change depending on the guaranteed annual payment plus the City's pro rata share of gross receipts for advertising for the previous twelve (12) month period and fees bid herein.)

4.   The term of this Contract shall be for a period of sixty (60) months from the date of this Contract, at the end of which term the parties herein shall be released from the terms of the Contract. That in the event this contract is not renewed, Franchisee shall have a period of sixty (60) days from the end of Contract to remove from the area described herein all benches set out to which they have title, or said benches may be sold to the City at a negotiated price between the two (2) parties, but in no event shall advertising be sold to be placed upon the public benches beyond the awarded sixty (60) month period.

ERMS AND CONDITIONS (CONT'D)

If any court of competent jurisdiction in the State of Florida determines that the City of Hollywood's Sign Ordinance, Article 107, Zoning and Land Development Code of the City of Hollywood, or any part thereof, is held invalid because of the Contract, the Contract shall become null and void and of no effect immediately upon such determination.

5. In the event of the breach of any of the terms of the Contract by Franchisee, and upon notification by the City to correct same, then in the event that the conditions complained of are not corrected by Franchisee within thirty (30) days of said notice, the City may elect and can, without further notice, declare the Contract breached and said contract will have no further legal force and effect. In the event the contract is terminated pursuant to this paragraph, Franchisee shall remove all of its bus benches within sixty (60) days.

7. Commencement of fees to the City of Hollywood:

Fifty percent (50%) of benches to be in place within thirty (30) days of award and one hundred percent (100%) of specified benches to be in place within sixty (60) days of award.

Fees for specified quantities of benches will commence at these times whether or not benches are in place and/or advertising displayed thereon.

## E.   OTHER CONSIDERATIONS

1. All contact for information regarding the Proposal must be addressed to the City of Hollywood Purchasing and Materials Management Division. Over the course of this RFP process, related contact with City Staff by a respondent or their agent, other than as part of the evaluation process or for clarification purposes, will be grounds for automatic disqualification of that vendor.

Each Proposer shall examine all Proposal Documents and judge for themselves all matters relating to the adequacy and accuracy of the documents. If the Proposer is of the opinion that any part(s) of the Proposal Document is incorrect or obscure, or that additional information is needed, he should request such information or clarification from the Director of Purchasing and Materials Management in order that appropriate addenda may be issued, if necessary, to all prospective Proposers.

2. No oral change or interpretation of the provisions contained in this Request for Proposal is valid whether issued at a pre-proposal conference or otherwise. Written addenda will be issued when changes, clarifications, or amendments to Proposal Documents are deemed necessary. The issuance of a written addendum is the only official method whereby interpretation, clarification or additional information can be given.

OTHER CONSIDERATIONS (CONT'D)

3.    All materials submitted in response to the RFP become the property of the City of Hollywood and will be returned only at the option of the City. The City has the right to use any or all ideas presented in any response to the RFP whether amended or not, and selection or rejection of the Proposal does not affect this right provided, however, that any Proposal that has been submitted to the City Clerk's Office may be withdrawn prior to Proposal opening time stated herein, upon proper identification and signature releasing Proposal Documents back to Proposer.

4.    The City reserves the right to determine, at its sole discretion, whether any aspect of a Proposal satisfies the criteria established in this Request for Proposals. The City further reserves the right to negotiate with any person or firm submitting Proposals and reserves the right to reject any or all Proposals with or without cause. The City also reserves the right to waive minor technical defects in a Proposal. In the event that this Request for Proposals is withdrawn by the City for any reason, the City shall have no liability to any applicant for any costs or expenses incurred in connection with this Request for Proposals or otherwise. All such expenses incurred in the preparation of a Proposal shall be borne by the Proposer.

5.    Statements by the Proposers offering to make contributions to charitable or not-for-profit organizations will be considered by the Evaluation Committee as informational only.

6.    Failure or refusal of the successful Proposer to execute a contract within thirty (30) days after award shall constitute a default. Any such Proposer shall not assign, transfer, convey or otherwise dispose of any or all of its rights, title or interest therein, or its power to execute such contract to any person or firm without prior written consent of the City.

## F.    EVALUATION CRITERIA

Proposals will be evaluated by staff using the criteria listed below to ascertain which Proposal best meets the requirements of the City. The items to be considered during the evaluation and the associated point values are as follows:

| | | |
|---|---|---|
| 1. | Experience of Principals in Like Municipal Engagements | 10% |
| 2. | Number of Jurisdictions under Contract for Similar Programs within the Past Two (2) Years | 10% |
| 3. | Number of Bus Benches Currently in Place in Local Government Jurisdictions | 10% |
| 4. | Plan for Implementation, Operation and Maintenance | 10% |
| 5. | Demonstrated Ability in Advertising | 10% |
| 6. | Revenue to the City | 50% |
| | **MAXIMUM TECHNICAL POINTS** | **100%** |

## G.    SELECTION PROCESS

Evaluation of the Proposals will be performed by a committee selected by the City. The committee will evaluate the firms according to their Proposal. The initial scores will be tallied, and a short list will be developed consisting of the firms receiving the highest point ratings. The committee may conduct discussions with offerors on the short list for the purpose of clarification to assure full understanding of, and responsiveness to, the solicitation requirements. In conducting discussions, there shall be no disclosure of any information derived from Proposals submitted by competing offerors. These firms may be invited to an oral interview before the committee. A short list of finalists will be determined and presented to the City Commission requesting their approval to negotiate a contract with the top ranked firm.

## PART II:   PROPOSAL SUBMISSION REQUIREMENTS

## A.   SUBMISSION REQUIREMENTS

All Proposals shall be received by the City Clerk, City of Hollywood, Administrative Center, 2600 Hollywood Boulevard, Hollywood, Florida 33020, and plainly marked on the outside of the envelope.

> PROPOSAL ENVELOPES SHALL BE SEALED AND IDENTIFIED AS SPECIFIED BELOW:
>
> RFP NO. 3621-JLW          BUS BENCH ADVERTISING
>
> TO BE OPENED:             3:00 P.M., FRIDAY, DECEMBER 3, 1999
>
> AND ADDRESSED TO:    CITY OF HOLLYWOOD
>                                      OFFICE OF THE CITY CLERK
>                                      P.O. BOX 229045
>                                      HOLLYWOOD, FLORIDA 33022-9045
>
> AN ORIGINAL AND EIGHT (8) COPIES OF YOUR PROPOSAL MUST BE SUBMITTED AT OR BEFORE TIME OF PROPOSAL OPENING.
>
> It will be the sole responsibility of the Proposer to have his Proposal delivered to the Office of the City Clerk on or before the closing hour and date shown above for receipt of Proposals. If a Proposal is sent by mail, the Proposers shall be responsible for its delivery to the City Clerk's Office before the closing hour and date shown above for receipt of Proposals. Proposals thus delayed will not be considered and will be returned unopened after award.

**The Proposal shall be signed by a representative who is authorized to contractually bind the Proposer.** Each Proposal shall be prepared simply and economically, providing a straightforward, concise delineation of the Proposer's capabilities to satisfy the requirements of the RFP. The emphasis in each Proposal must be on completeness and clarity of content. In order to expedite the evaluation of Proposals, it is essential that Proposer follow the format and instructions contained herein. If the Proposer so wishes, the Proposal may be accompanied with brochures, promotional materials, or displays properly identified. However, Proposal Submission Requirements as listed herein must be followed. All Proposals must be submitted as specified on the Proposal pages which follow. Any attachments must be clearly identified.

9

SUBMISSION REQUIREMENTS (CONT'D)

The signed Proposal shall be considered an offer on the part of the Proposer, which offer shall be deemed accepted upon approval of the City Commission of the City of Hollywood, and in case of default the City of Hollywood reserves the right to accept or reject any or all Proposals, to waive irregularities and technicalities, and request new Proposals. The City also reserves the right to award any resulting agreement as it deems will best serve the interests of the City.

Proposer must insure that they have signed the Proposal Signature Page in ink. Omission of a signature on that page may result in rejection of your Proposal.

## FORMAT

1.   Title Page

     Show the request for Proposal subject, the name of your firm, address, telephone number, name of contact person and date.

2.   Table of Contents

     Clearly identify the material by section and page number.

3.   Letter of Transmittal

     Limit to one (1) or two (2) printed pages.

     a.   Briefly state your firm's understanding of the work to be done and provide a positive commitment to perform the work.

     b.   Give the names of the persons who will be authorized to make representations for your firm, their titles, addresses and telephone numbers.

4.   Profile of Proposer

     a.   State whether your organization is national, regional or local.

     b.   State the location of the office from which your work is to be performed.

     c.   Provide a list and description of similar municipal programs satisfactorily performed within the past two (2) years. For each engagement listed, include the name and telephone number of a representative for whom the engagement was undertaken who can verify satisfactory performance.

     d.   Have you been involved in litigation within the last five (5) years or is there any pending litigation arising out of your performance?

SUBMISSION REQUIREMENTS (CONT'D)

5.  Describe your plan for implementation, operation and maintenance of this program. This should include the following points:

    a.  Schedule for placement of benches including start and completion date.

    b.  Schedule to be followed for servicing benches.

    c.  Advertising plan including projected revenues, advertising rates and frequency of advertisement changes.

    d.  Number of employees to be involved with program.

    e.  Number and type of vehicles to be dedicated in support of this program.

    f.  Provide location from which proposed bus bench operation is to be conducted.

6.  Summary of Proposer's Payment Schedule.

    •   State the guaranteed annual payment to be made to the City for each year of the agreement.
    •   State the percentage of gross advertising receipts to be paid to the City.
    •   State any escalation of the City's share of gross advertising receipts for each succeeding year.

7.  Provide a detailed time schedule for placement of bus benches.

8.  Provide Pro Forma Financial Statements for the past three (3) years.

## B.   GENERAL INFORMATION AND SCHEDULE

For information concerning procedure for responding to this Request for Proposal (RFP), contact the City's Director of Purchasing and Materials Management, John L. Weyrauch, at (954) 921-3221. Such contact is to be for clarification purposes only. Material changes, if any, to the scope of services or Proposal procedures will only be transmitted by written addendum.

It is preferred that all questions be submitted in writing. Questions should be directed to the City of Hollywood, P.O. Box 229045, Hollywood, Florida 33022-9045, Attention: John L. Weyrauch, CPPO, C.P.M., Director of Purchasing and Materials Management, or to facilitate prompt receipt of questions, they may be sent via fax at (954) 921-3086.

C.2, -30%

11

GENERAL INFORMATION AND SCHEDULE (CONT'D)

RFP Schedule

REQUEST FOR PROPOSALS ISSUED                    NOVEMBER 10, 1999

PROPOSAL DUE DATE-PRIOR TO 3:00 P.M.            FRIDAY, DECEMBER 3, 1999

## C.   EQUAL EMPLOYMENT OPPORTUNITY

Proposer shall provide a written statement that it does not and will not discriminate against any person, employee, or applicant for employment, because of race, creed, color, religion, sex, national origin, ancestry, age or disability.

## D.   MINORITY/WOMEN BUSINESS ENTERPRISE STATEMENT

The City of Hollywood is strongly committed to ensuring the participation of certified Minority/Women Business Enterprises (M/WBE's) in contract and subcontract opportunities which may become available as the result of the City's acceptance of any Proposals. As part of their RFP proposals, proposers must be prepared to demonstrate M/WBE participation in the numerous components of the project.

Proposers will be expected to utilize M/WBE's certified by the State of Florida, Broward County, The Broward County School Board and others with similar certification criteria to meet agreed upon participation goals.

Proposers are encouraged to participate in the City of Hollywood's M/WBE Program by including as part of their proposal package, the M/WBE Participation Form (Exhibit "A"), and the Letter of Intent Form (Exhibit "B").

## E.   ADA COMPLIANCE

Persons with disabilities who require reasonable accommodation to participate in City programs and/or services may call the Equal Opportunity Manager, Office of Human Resources at (954) 921-3218 (voice). If an individual is hearing or speech impaired, please call (954) 921-3239 (V-TDD).

12

## F.   PUBLIC ENTITY CRIMES

"A person or affiliate who has been placed on the convicted vendor list following a conviction for public entity crime may not submit a bid on a contract to provide any goods or services to a public entity, may not submit a bid on a contract with a public entity for the construction or repair of a public building or public work, may not submit bids on leases of real property to public entity, may not be awarded or perform work as a contractor, supplier, subcontractor, or consultant under a contract with any public entity, and may not transact business with any public entity in excess of the threshold amount provided in Section 287.017, for CATEGORY TWO ($15,000) for a period of 36 months from the date of being placed on the convicted vendor list."

## G.   INSURANCE REQUIREMENTS

The Franchisee shall not commence work under this contract until it has obtained all insurance required under this paragraph and such insurance has been approved by the Risk Manager of the City, nor shall the Franchisee allow any subcontractor to commence work on its sub-contract until all similar such insurance required of the subcontractor has been obtained and approved.

**Certificates of Insurance,** reflecting evidence of the required insurance, shall be filed with the Risk Manager prior to the commencement of the work. These certificates shall contain a provision that coverage afforded under these policies will not be canceled until at least thirty (30) days prior written notice has been given to the City. Policies shall be issued by companies authorized to do business under the laws of the State of Florida, shall have adequate policyholders and financial ratings in the latest ratings of A.M.Best, and shall be part of the Florida Insurance Guarantee Association Act.

Insurance shall be in force until all work required to be performed under the terms of the contract is satisfactorily completed as evidenced by the formal acceptance by the City.  In the event the insurance certificate provided indicates that the insurance shall terminate and lapse during the period of this contact, the Franchisee shall furnish, at least thirty (30) days prior to the expiration of the date of such insurance, a renewed certificate of insurance as proof that equal and like coverage for the balance of the period of the contract and extension thereunder is in effect. The Franchisee shall not continue to work pursuant to this contract unless all required insurance remains in full force and effect.

1.    Commercial General Liability Insurance naming the City as an additional insured with not less than the following limits:

| | |
|---|---|
| General Aggregate | $1,000,000 |
| Products-Comp | $1,000,000 |
| Personal Injury | $1,000,000 |
| or | |
| Each Occurrence | $1,000,000 |
| Fire Damage | $     50,000 |
| Med Exp | $       5,000 |

13

INSURANCE REQUIREMENTS (CONT'D)

Coverage shall include contractual liability assumed under this agreement, products and completed operations, personal injury, broad form property damage, and premises-operations.

2.  <u>Commercial Automobile Liability Insurance</u> naming the City as an additional insured with not less than the following limits:

    Combined Single Limit            $500,000

    Coverage shall include contractual liability assumed under this agreement, owned, hired and non-owned vehicles.

3.  <u>Workers' Compensation Insurance</u> shall be maintained during the life of this contract to comply with statutory limits for all. Employees, and in the case any work is sublet, the Franchisee shall provide Workers' Compensation Insurance for all the latter's employees unless such employees are covered by the protection afforded by the Franchisee. The Franchisee and his subcontractors shall maintain during the life of this contract Employer's Liability Insurance. The following minimum limits must be maintained.

    Worker's Compensation            $100,000/500,000/100,000 for coverage

The City reserves the right to require any other insurance coverage it deems necessary depending upon the exposures.

## H.    PROTEST

Notice of intent to award a contract will be posted for review by interested parties in the Purchasing Office for a period of five (5) business days. Any actual or prospective Proposer who is aggrieved in connection with the pending award must file a written protest within five (5) business days after the posting date, in accordance with the City of Hollywood's Purchasing Ordinance Section 38.51, or any right to protest is forfeited.

## I.  DECLARATION

The undersigned, as Proposer (herein used in the masculine singular, irrespective of actual gender and number), declares under oath that no other person has any interest in this Proposal or in any resulting agreement to which this Proposal pertains and that this Proposal is made without connection or arrangement with any other persons and without collusion or fraud.

The Proposer further declares that he has complied in every respect with all the instructions to Proposers, that he has read all addenda, if any, issued prior to the opening of Proposals, and that he has satisfied himself fully relative to all matters and conditions with respect to the general conditions of the agreement and all relevant information to which this proposal pertains.

## J.  YEAR 2000 (Y2K) COMPLIANCE

The Contractor warrants that each hardware, software, and firmware product as well as any other services, products, supplies, materials, operating systems and associated equipment connected to the delivery and supply to the City under this contract and listed below shall be able to accurately process date data (including, but not limited to, calculating, comparing, and sequencing) from, into and between the years 1999 and 2000, including leap year calculations, when used in accordance with the product documentation provided by the Contractor, provided that all listed or unlisted products (e.g. hardware, software, firmware) used in combination with such listed product properly exchange date data with it. If the contract requires that specific listed products must perform as a system in accordance with the foregoing warranty, then that warranty shall apply to those listed products as a system.  Notwithstanding any provision to the contrary in any commercial warranty or warranties, the remedies available to the City under this warranty shall include repair or replacement of any listed product whose non-compliance is discovered and made know to the Contractor in writing within ninety (90) days after acceptance. Nothing in this warranty shall be construed to limit any rights or remedies the City may otherwise have under this contract with respect to defects other than Year 2000 performance.

## K. DISCLOSURE STATEMENT

Vendor shall disclose below, to the best of his or her knowledge, any City of Hollywood officer or employee, or any relative of any such officer or employee as defined in Section 112.3135, Florida Statutes, who is an officer, partner, director or proprietor of, or has a material interest in the vendor's business or its parent company, any subsidiary, or affiliated company, whether such City official or employee is in a position to influence this procurement or not.

Failure of a vendor to disclose any relationship described herein shall be reason for debarment in accordance with the provisions of the City of Hollywood Purchasing Ordinance.

Name                                          Relationship

_____          _____

_____          _____

In the event the vendor does not indicate any names, the City shall interpret this to mean that no such relationship exists.

**PROPOSER'S NOTE:**   Award of any proposal will require that the successful proposer ensure that a properly completed Vendor Registration Form is on file with the City.

## SIGNATURE PAGE

CERTIFICATION

THE PROPOSER CERTIFIES THAT THIS PROPOSAL IS BASED UPON ALL CONDITIONS AS LISTED IN THE PROPOSAL DOCUMENTS AND THAT HE HAS MADE NO CHANGES IN THE PROPOSAL DOCUMENT AS RECEIVED.   HE FURTHER PROPOSES AND AGREES, IF HIS PROPOSAL IS ACCEPTED HE WILL EXECUTE AN APPROPRIATE AGREEMENT FOR THE PURPOSE OF ESTABLISHING A FORMAL CONTRACTUAL RELATIONSHIP BETWEEN HIM AND THE CITY OF HOLLYWOOD, FLORIDA, FOR THE PERFORMANCE OF ALL REQUIREMENTS TO WHICH THIS PROPOSAL PERTAINS.

PROPOSAL SUBMITTED "BY"

_____

NAME OF FIRM(S), CORPORATION, OR INDIVIDUAL

_____

ADDRESS OF FIRM(S), CORPORATION, OR INDIVIDUAL

BY:_____          _____
    SIGNATURE                                                  TITLE

IF CORPORATION - SEAL AND SECRETARY'S SIGNATURE:_____

IF INDIVIDUAL - SOLE OWNER,  PARTNERSHIP OR JOINT VENTURE  - TWO (2) WITNESSES

WITNESS      _____          _____
            NAME                                            ADDRESS

            _____          _____
            NAME                                            ADDRESS

STATE OF _____

COUNTY OF _____

BEFORE ME, PERSONALLY APPEARED _____, TO ME WELL KNOWN AND KNOWN TO ME TO BE THE PERSON(S) DESCRIBED HEREIN AND WHO EXECUTED THE FOREGOING CERTIFICATION AND ACKNOWLEDGED TO AND BEFORE ME THAT _____ EXECUTED SAID CERTIFICATION FOR PURPOSES THEREIN EXPRESSED.

WITNESS MY HAND AND OFFICIAL SEAL, THIS _____ DAY OF _____, 19____.

NOTARY SEAL                              _____
                                NOTARY SIGNATURE

                    IDENTIFICATION SHOWN_____

                    COMMISSION EXPIRES_____

EXHIBIT

CITY OF HOLLYWOOD, FLORIDA
MINORITY/WOMEN BUSINESS ENTERPRISE (M/WBE)
PARTICIPATION FORM

Contract Title: _____

Contractor's Name: _____

| | | CONTRACT AMOUNT |
|---|---|---|
| PERFORMED | | |
| | | |

FOR USE OF HUMAN RELATIONS
OFFICE ONLY

Certification Status of (Proposed) Firm:

☐ Certified    ☐ Not Certified    ☐ Requires Follow-up

MBE Contract Amount: $ _____

Total Contract Amount: $ _____

Are documents requested submitted according?    ☐ Yes    ☐ No

1\\acsa\rm\e\wbkpkg.doc

# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

UPTOWN PAWN & JEWELRY, INC.
A Florida Corporation

                    Plaintiff             CASE NO.

vs.

THE CITY OF HOLLYWOOD,
A Florid Municipal Corporation

                    Defendant

_____/

## AFFIDAVIT OF NICHOLAS DELLA GROTTA IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1. My name is Nicholas Della Grotta. I am the president of UPTOWN PAWN & JEWELRY, INC., the Plaintiff in this action.

2. UPTOWN PAWN is in the pawnbrokering business. My business is located at 6020 Hollywood Boulevard, Hollywood, Florida.

3. Prior to January 17, 2000, my business placed advertisements on bus benches that were owned by the City of Hollywood, Florida. I had a contract with the Hollywood Jaycees to place advertisements on these benches.

4. These advertisements were an important part of my business and were responsible for a significant percentage of my revenue.

5. My advertisements stated the name of my business and its phone number. My advertisements were not misleading and were true (a copy of my advertisement is attached to this affidavit as Exhibit A).

EXHIBIT B

6.  In January of 2000, I was informed that the contract that had previously been awarded to the Hollywood Jaycees was being terminated and that a Request for Proposal was being issued (Exhibit A to Plaintiff's Motion for Preliminary Injunction) that would absolutely prohibit me from placing my advertisements on bus benches in the City of Hollywood.

7.  Since January 17, 2000, I have been prevented from placing my advertisements on bus benches in the City of Hollywood.

8.  I have lost a substantial amount of revenue because of this action by the City of Hollywood and continue to lose money every day because I have been denied the right to place my advertisements on bus benches that are owned by the City of Hollywood.

Nicholas  Della Grotta

COUNTY OF BROWARD
STATE OF FLORIDA

The foregoing instrument was acknowledged before me this _2-1_ day of August, 2000, by Nicholas Della Grotta, who is personally known to me or have produced _FlA Drivers License_ as identification and who did take an oath.

OFFICIAL NOTARY SEAL
C ZAHARIS-ALLEN
COMMISSION NUMBER
CC921130
COMMISSION EXPIRES
APR. 2,2004

Notary Public

My Commission Expires:



**EXHIBIT A**